IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WENDELL CARL NEWTON, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case. No.: 2:07-CV-1274-JHH |
| } | |
| MICHAEL J. ASTRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, Wendell Carl Newton, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed his application for DIB protectively on August 25, 2004, alleging a disability onset date of March 10, 2004. (R. 10, 52). On December 13, 2004, Plaintiff's application was denied initially. (R. 22). At Plaintiff's request, an administrative hearing was conducted before Administrative Law Judge ("ALJ") Jerome L. Munford on August 16, 2006. (R. 135-84). Both Plaintiff and Vocational Expert ("VE") Norma Stricklin testified at the hearing. (R. 140-84).

In the February 14, 2007 decision, the ALJ determined that Plaintiff was not eligible for DIB because he was not under a "disability," as defined by the Act, at any time through the date of

decision. (R. 25-26). After the Appeals Council denied Plaintiff's request for review on May 17, 2007, (R. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was forty-eight years old, a "younger" individual under the statutory framework, and had completed two years of college with no degree obtained. (R. 140, 161). He has past relevant work experience in construction, and as a warehouse worker, delivery person, enumerator for the census, unarmed security guard, alarm salesperson, and night bellman. (R. 141-43, 153-56). According to Plaintiff, he has been unable to engage in substantial gainful activity since March 10, 2004, when he became unable to work due to pain in his right hip and lower back. (R. 142-43). After a subsequent MRI of his hip revealed degenerative disc disease and hip disease, he underwent a total hip replacement in February 2005, and relied upon a walker for approximately three months after surgery. (R. 144-45).

At the August 2006 administrative hearing, Plaintiff was still utilizing a cane to assist with walking. (R. 162-63). He rated his lower back pain and residual hip pain as a seven or eight (on a scale of 0 to 10), although he could not pinpoint whether the origination of his pain was in the back or hip. (R. 168-69). According to Plaintiff, his pain is fairly constant, with five "bad" days per week which leave him bedridden and only two "good" days per week. (R. 146, 151). To reduce the pain, Plaintiff testified that he elevates his legs while sitting in a recliner for up to twelve hours at a time, takes Tylenol IV and a generic form of Lortab as needed, and sits in a hot tub with Epson salt. (R. 147). He estimated that he can stand for up to fifteen minutes and can walk about a block, although sitting for up to twenty minutes increases his pain. (R. 149-50).

Plaintiff also reported additional trouble with asthma, depression, and anxiety. At the time of the hearing, Plaintiff recently had stopped smoking, although he stated that he experiences asthma attacks approximately twice a month which he treats with an inhaler and breathing treatments. (R. 148-49). He said an attack could last up to twenty minutes and in the past required him to go to the emergency room for oxygen. (R. 165-67). Plaintiff also reported that he suffers from depression and anxiety which are caused by his pain and exacerbated by a separation from his wife and his inability to work. (R. 150-52). Plaintiff reported low self-esteem, inability to concentrate, and memory loss due to pain. (R. 151-52).

**II.    ALJ Decision**

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner

finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability on March 10, 2004. (R. 17). The ALJ found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe:" asthma, right hip pain status post total arthroplasty, and adjustment disorder. (R. 13). Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 13). According to the ALJ, Plaintiff's subjective complaints concerning his alleged impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 16).

Moreover, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with certain limitations including a sit/stand option, only occasional bending and stooping, a temperature-controlled environment, no operation of a motor vehicle, no working at unprotected heights, no climbing, no push/pull movements, and no operation of controls with his lower right extremity. (R. 16). With those restrictions, and given his impairments, the ALJ expects

that Plaintiff will experience no greater than mild to moderate functional limitations on his ability to perform basic work activities. (R. 16).

The ALJ sought testimony from VE Norma Stricklin at the administrative hearing, and he posed several hypothetical questions to her regarding different scenarios of functional capacity and pain level. (R. 47A-47B, 172). The VE identified Plaintiff's prior work as "light to heavy" in level of required exertion and "unskilled to semiskilled," with no transferable skills. (R. 174-177). In response to the ALJ's question regarding whether an individual experiencing pain at a moderate level with little impact from depression could work, the VE testified that such an individual would be able to perform several jobs in the "light" range of exertion, including inspector, salesman, and office worker, in addition to several jobs in the "sedentary" level of exertion, including cashier, information clerk, production assembler, and production inspector. (R. 176-81). The VE testified that excessive absenteeism would eliminate all such jobs, as would a requirement to elevate the leg for pain relief. (R. 181-82). When asked what type of work could be performed by an individual with pain at the moderately severe to severe level, the VE identified no available jobs in the national economy that such an individual could perform. (R. 182). Thus, with the help of that testimony from the VE, the ALJ found that Plaintiff could perform work existing in significant numbers in the national economy. (R. 16-17). Accordingly, the ALJ found that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 18).

**III.    Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 8, at 15). Plaintiff argues that, for the following

reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ improperly applied the three-part pain standard and thus erroneously rejected Plaintiff's complaints of pain; and (2) the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician Dr. Edward U. Kissel, III.  (Doc. # 8, at 9-15).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  see 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in

scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ properly discounted Plaintiff's subjective complaints and appropriately weighted the opinion of Plaintiff's treating physician Dr. Kissel when he found that Plaintiff was not under a "disability" at any time prior to the decision.

### A.     Evaluation of Plaintiff's Subjective Complaints Under the Pain Standard

Plaintiff contends that when determining his ability to work, the ALJ failed to appropriately evaluate his alleged pain and subjective symptoms in light of the "pain standard." (Doc. # 9, at 10-14). It is axiomatic that the Act and its related regulations provide that a plaintiff's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a plaintiff alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at

1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ fails to credit a plaintiff's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a plaintiff actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a plaintiff's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a plaintiff's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard, *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the court finds that the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints. Here, the ALJ cited to the Eleventh Circuit caselaw outlining the pain standard and considered Plaintiff's symptoms and subjective complaints in light of the steps outlined therein. (R. 14-15). The ALJ determined that although Plaintiff does have some underlying medical conditions that relate to his pain allegations, his statements concerning the pain caused by those conditions and its impact on his ability to work are not entirely credible. (R. 14-15). In so finding, the ALJ conducted a thorough review of the medical

evidence of record and determined that Plaintiff's subjective complaints were not consistent with the objective evidence.

Indeed, the medical evidence of record does not document a long-term debilitating psychological or physical condition that could be expected to cause the severe pain of which Plaintiff complains. After Plaintiff left his heavy-labor construction job in March 2004 due to ongoing hip pain (R. 141-42), x-rays of his hip showed moderate degenerative changes. (R. 96). When Dr. Kissel treated Plaintiff for "vague" knee pain in August 2004, MRI scans revealed only mild degenerative changes in the right knee and small disc bulging in the lumbar spine. (R. 88, 94). At that time, Plaintiff reported to Dr. Kissel that his hip was not terribly painful (R. 128-29), although he reported an increase in that pain when he was seen by Dr. Kissel late 2004 and early 2005. (R. 126-27). Nevertheless, in November 2004, Plaintiff told consultative physician Dr. Romeo that he remained independent in terms of daily activities except for occasionally requiring help getting in and out of the bathtub. (R. 14, 101).[1] There is simply no evidence that Plaintiff had an objectively determined medical condition of such severity that it could reasonably be expected to cause the level of pain he alleges.

Nor is there objective medical evidence confirming the severity of Plaintiff's alleged pain arising from his conditions. After his February 2005 hip replacement surgery, Plaintiff's reports of pain markedly improved. In March 2005, he reported only mild pain to Dr. Kissel. (R. 124).

---

[1] While it is clear in this Circuit that "participation in everyday activities of short duration" does not mean that a plaintiff is not disabled, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), such activities are relevant to the matter of Plaintiff's credibility. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005) (finding that ALJ properly considered plaintiff's daily activities, frequency of symptoms, medications, and found subjective complaints were inconsistent with plaintiff's medical record).

Internal and external rotation of the hip was not painful, and gait was relatively normal (R. 124). On June 12, 2005, Dr. Kissel noted that Plaintiff was "tremendously improved" with only mild thigh pain, "great" x-rays, and no documented deficits in walking, standing, lifting, or using his legs. (R. 123). Although Plaintiff reported at the hearing - which was held over 18 months after his hip surgery - that he still used a cane to assist with walking, there is no indication in the record that a cane was recommended or prescribed by any doctor. Dr. Kissel only suggested that Plaintiff use a walker for 6 weeks after his February 2005 surgery, not for a year and a half after his hip replacement. (R. 118-128A).

Moreover, the court rejects Plaintiff's hypothesis that it would be "logical" for Plaintiff's "spurring and bulging discs" to worsen over time and cause him more pain. (Doc. # 8, at 11). First, there is no evidence of worsening in the record. Moreover, it is not for the ALJ - or this court - to speculate about the state of Plaintiff's medical condition during the relevant time period. Indeed, it is the *actual* functional limitations imposed by a condition that are relevant to the disability analysis, not the mere diagnosis and certainly not a conjectured worsening of that diagnosis. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987)(finding that the mere diagnosis of polymyalgia rheumatica says nothing about why the disability makes it impossible for the plaintiff to be gainfully employed); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)(holding that the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work).

Moreover, Plaintiff's citation to a treatise describing the severity of - and presumably pain caused by - medical conditions such as nerve root disorders, herniated nucleus polposus, and cervical spondylosis, (Doc. # 8, at 12-14), is inapposite. Plaintiff has not even been diagnosed with those conditions, much less demonstrated functional limitations as a result thereof. Indeed, as the ALJ

observed, the only objective medical imaging of Plaintiff's spine and knee revealed mild degenerative changes and small disc bulging with no other abnormalities, herniations, or stenosis. (R. 14, 93, 94, 100). Given these relatively mild diagnoses, it was entirely appropriate for the ALJ to discredit Plaintiff's complaints of pain due to the discrepancy between the objective clinical findings and his description of severe disabling pain. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)(reasoning that ALJ properly doubted plaintiff's allegations of disabling pain where there were "no clinical findings indicative of a back impairment of the degree of severity described by [the plaintiff]").

For all of these reasons, the court finds that the ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence.

### B. Weight Accorded to the Opinion of Dr. Kissel

Plaintiff also contends that the ALJ improperly discounted the opinion of his treating physician, Dr. Edward Kissel, when reaching his disability conclusion.[2] To the contrary, the court finds that the ALJ applied proper legal standards when weighting the evidence submitted by Dr. Kissel, and his conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a plaintiff's impairments depends upon a number of factors, including the source's examining and treating relationship with the plaintiff, the evidence presented to support the opinion, the consistency

---

[2] The court focuses its analysis on the legal issues implicated in this case and not on Plaintiff's *ad hominem* attacks on ALJ Munford. Absent a clear showing by Plaintiff that the ALJ exhibited a conflict of interest or other *specific* reason for disqualification, this court must *presume* that administrative adjudicators, such as ALJs, are unbiased, and that they exercise their decisionmaking authority with honesty and integrity. *Schweicker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. *Lewis*, 125 F.3d at 1440.

Although Plaintiff's brief generally takes issue with the ALJ's consideration of Dr. Kissel's opinions, a review of the ALJ's decision reveals that he actually gave substantial consideration to all of Dr. Kissel's treatment notes and opinions about Plaintiff's condition, with one exception. The ALJ did not criticize outright Dr. Kissel's June 13, 2005 conclusory opinion that "I personally feel like [Plaintiff] is unemployable at this point," but he indirectly rejected that opinion by finding that Plaintiff retains the functional capacity to perform a range of work. (R. 123). Aside from the fact that it was entirely appropriate for the ALJ to give less than controlling weight to Dr. Kissel's opinion on the ultimate issue of disability, Dr. Kissel's conclusion that Plaintiff was "unemployable" simply was not consistent with his treatment notes from that same date which revealed great improvement and only mild pain. Indeed, the ALJ accorded great weight to Dr. Kissel's post-surgery

observations of June 13, 2005 – "tremendously improved with regard to his groin pain, some morning stiffness and mild thigh pain, but otherwise definitely improved from the last visit. X-rays look great" – which preceded his seemingly-contradictory conclusory statement that Plaintiff was "unemployable." (R. 123). In any event, the ALJ's opinion was guided by proper legal standards because it is well-settled that although an ALJ can consider opinions from acceptable medical sources on such issues as a plaintiff's RFC and whether a plaintiff is disabled, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).

Moreover, it is apparent from the entirety of the record that Plaintiff's medical conditions do not render him "unemployable." Although Dr. Kissel did not recommend that Plaintiff return to his heavy labor position after his February 2005 hip replacement surgery, he did indicate at the three-month post-surgery point that Plaintiff should be able to perform work in the light exertion range with a 20-pound lifting limit. (R. 119). He also believed that Plaintiff would continue to improve over the course of a year post-surgery (R. 119), and records indicate that was most certainly the case as Plaintiff was "tremendously improved" four months after the surgery, and his x-rays looked "great." (R. 123-24). Even prior to his hip replacement surgery, consultative examiner Bruce Romeo, M.D., concluded that Plaintiff could perform a range of light work. (R. 101-09). Likewise, state agency physician R. G. Carmichael, M.D., reviewed Plaintiff's medical records as of December 7, 2004 (two months prior to hip surgery), and concluded that he could perform light work despite his impairments. (R. 110-17).

Given that the ALJ owed no deference to Dr. Kissel's summary statement regarding the ultimate issue of disability, and considering that it was nevertheless inconsistent with his own

clinical notes and the other evidence of record, the court finds that the ALJ's treatment of Dr. Kissel's conclusory statement was appropriate, guided by proper legal standards, and supported by substantial evidence.

## VI. Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the   23rd   day of September, 2008.

*/s/ James H. Hancock*
SENIOR UNITED STATES DISTRICT JUDGE